UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERTO PEREYRA and CITY FITNESS GROUP, LLC, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 15-cv-12854-ADB |
| HERVE SEDKY, et al., | * * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

December 3, 2015

BURROUGHS, D.J.

### I.    INTRODUCTION

Plaintiffs Roberto Pereyra ("Pereyra") and City Fitness Group, LLC filed this action

against Defendants Herve Sedky ("Sedky"), and five limited liability corporations that Sedky

allegedly controls: KLIO Fitness Clubs, LLC; KLIO Fitness BOS, LLC; KLIO Fitness Lynn,

LLC; KLIO Fitness MHD, LLC; and KLIO, LLC.[1] This case arises out of a 2013 asset purchase

transaction in which Sedky and KLIO, LLC bought a chain of three health clubs from Pereyra. A

number of disputes arose after the asset purchase was consummated, prompting Plaintiffs to file

the instant Complaint on June 29, 2015. [ECF No. 1]. The Complaint asserts federal Lanham Act

claims for service mark infringement, unfair competition, and cyberpiracy (Counts I – III), as

well as state law claims for breach of contract (Count IV); violation of the Massachusetts Wage

and Hour Act, Mass. Gen. Laws c. 149, § 148 (Count V); breach of fiduciary duty (Count VI);

---

[1] Sedky is alleged to own at least a 70% membership interest in each of the defendant entities.
[Complaint, ECF No. 1, ¶ 29].

fraud and misrepresentation (Count VII); and violation of Massachusetts General Laws Chapter 93A (Count VIII).

On August 21, 2015, Defendants filed a Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 21]. Defendants argue that Counts I, II, III (Lanham Act), Count VI (fiduciary duty), Count VII (fraud/misrepresentation), and Count VIII (Chapter 93A) of the Complaint should be dismissed for failure to state claims upon which relief may be granted.  Defendants have not moved to dismiss the breach of contract or the statutory wage and hour claims alleged in Counts IV and V. Plaintiffs filed an Opposition on September 18, 2015 [ECF No. 28], and Defendants filed their Reply on October 9, 2015 [ECF No. 32]. The Court held a hearing on Defendants' Motion on November 18, 2015.

The Court has original jurisdiction over the federal Lanham Act claims alleged in Counts I, II, and III pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over federal trademark actions). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  For the reasons set forth in this Memorandum and Order, Defendants' Motion to Dismiss is ALLOWED as to the Lanham Act claims in Counts I, II, and III. Following input from the parties, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, but notes that Plaintiffs may elect to pursue these claims in state court if they are so inclined. See 28 U.S.C. § 1367(c).

## II.    FACTS ALLEGED IN THE COMPLAINT

Plaintiffs' Complaint alleges the following facts, which the Court accepts as true for purposes of this motion.

Pereyra is the Manager and sole member of Plaintiff City Fitness Group, LLC ("City Fitness"), a Massachusetts limited liability company. [ECF No. 1 ("Compl.") ¶¶ 5, 14]. City Fitness, which operated under the trade name "Leap Fitness," is the former owner and operator

of three health and fitness clubs located in Boston, Marblehead, and Lynn, Massachusetts (the "Health Clubs"). [Id. ¶ 15]. City Fitness acquired the Lynn location in 2007, and the Boston and Marblehead locations in 2011. [Id. ¶ 16]. City Fitness entered into several equipment lease agreements to supply the Health Clubs with various pieces of gym equipment. [Id. ¶¶ 19-24]. Pereyra personally guaranteed these equipment leases. [Id. ¶¶ 20-24].

On May 7, 2013, City Fitness registered a service mark with the United States Patent and Trademark Office for "Leap Fitness," consisting of "the standard character mark, Word Mark, 'Leap Fitness,' Registration Number 4332014, International Class 41, relating to health club services providing for the instruction and equipment in the field of physical exercise." [Id. ¶ 25]. Two weeks later, on May 21, 2013, City Fitness registered a second service mark for "Leap Fitness," consisting of "a design plus words and/or letters, Word Mark, 'Leap Fitness,' . . . Registration Number 4338272, International Class 41, relating to health club services providing for the instruction and equipment in the field of physical exercise ." [Id. ¶ 26]. A representation of that service mark appears visually as follows:



 [Id.]. Plaintiffs allege that City Fitness used these two service marks for identification and marketing purposes, by placing them on its letterhead, internal and external memoranda, business cards, t-shirts, indoor and outdoor signs, and website. [Id. ¶ 27].

### 2013 Negotiations with Sedky

Shortly after the servicemarks were registered, Pereyra and City Fitness entered into negotiations with Sedky regarding his potential purchase of the Health Clubs. On June 1, 2013, Pereyra and City Fitness Group, LLC entered into a written Memorandum of Understanding ("MOU") with Sedky and one of Sedky's companies, KLIO, LLC, concerning the sale of all three Health Clubs, and the assets of City Fitness. [Compl. ¶ 31]. The MOU recited, *inter alia*, that Pereyra and City Fitness were "desirous of selling all three of its health clubs," and that KLIO, LLC would purchase from City Fitness "all of City Fitness' right, title, interest in and of the business Facilities, including but not limited to, all of the assets, any and all customer lists, goodwill, name, equipment, leasehold improvements, security deposits, Accounts Receivables, computers, software, furniture and equipment, and any and all assets used in the business." [ECF No. 1-2, ("MOU") p. 1].[2]

Plaintiffs also allege that in June 2013, Sedky and KLIO, LLC made "oral and written representations to Pereyra" that they would assume liability and all future payments for the equipment leases. [Compl. ¶ 85]. Pereyra alleges that he relied on these representations when he later discontinued payments on the leases. [Id. ¶ 86]. Plaintiffs further allege that when Sedky made these misrepresentations to Pereyra, he did so with "reckless disregard for the truth, and/or with no intention of honoring such promises." [Id. ¶ 85].

### The August 16, 2013 Asset Purchase Agreement

On August 16, 2013, KLIO Fitness, LLC and City Fitness entered into a written Asset Purchase Agreement. [Compl. ¶ 35; see also ECF No. 24-1 (the "APA")].[3] The APA refers to

---

[2] A copy of the MOU is attached to Plaintiffs' Complaint at Exhibit A. [ECF No. 1-2].
[3] The APA is attached to Plaintiffs' Complaint at Exhibit B [ECF No. 1-3], but Plaintiffs appear to have attached only odd pages. A full copy of the APA is attached as Exhibit A to the Affidavit of Herve Sedky, which was filed in support of Defendants' Opposition to Plaintiffs' Motion for

City Fitness as the "Seller," and to KLIO Fitness, LLC as the "Purchaser." [APA p. 1].[4] The

APA's "Preliminary Statement" recites that

> [t]he Purchaser desires to acquire from the Seller, and the Seller
> desires to transfer to the Purchaser, all of the Seller's assets
> properties and business (the "Assets"), and the three [Health
> Clubs] ("Facilities"), as set forth in Schedule 1.1 attached hereto,
> upon the terms and conditions set forth in this Agreement.

[Id.] [alteration added].  In turn, Schedule 1.1 to the APA defines the "Assets" as

> [a]ll of City Fitness' right, title, interest in, to and of the business
> Facilities, including but not limited to, all of the assets, any and all
> customer lists, goodwill, name, equipment, leasehold
> improvements, security deposits, Accounts Receivables,
> computers, software, furniture and equipment, and any and all
> assets used in the business. All assets shall be sold free and clear of
> any liens or encumbrances.

[Id. p. 16]. Schedule 1.1 then goes on to list a number of specific assets:

Accounts Receivable

> All accounts and credit receivables

Customer Contracts

> All prepaid sessions if any

Equipment Leases

> The Buyer shall assume the payments on the equipment leases.

Name

> City Fitness

Property Leases

> Three Locations:

> 181 Union Street, Lynn, MA

---

an Attachment. [ECF No. 24-1]. For the sake of completeness, the Court will cite to the version
attached to the Sedky Affidavit. Plaintiffs have not challenged the accuracy or authenticity of
this document.

[4] The first paragraph of the APA identifies City Fitness as a "Massachusetts corporation
organized and existing under the laws of the Commonwealth of Massachusetts."  [APA p. 1].
Later, however, Paragraph 3.1 states that the Seller "is a limited liability company duly
organized . . . under the laws of the Commonwealth of Massachusetts." [Id. p. 3].

> 71 Lansdowne Street, Boston
> 46 Tioga Way, Marblehead, MA

Supplies

> Seller's inventory of bathroom supplies
> See attached List

Equipment

> See attached List[5]

Id. Plaintiffs point out that the rights to the "Leap Fitness" service marks are not specifically enumerated among the Assets listed in Schedule 1.1.

The APA also sets forth the Purchase Price for the sale of the Assets, 75% of which would be paid to the Purchaser in cash on the closing date, with the remaining 25% to be paid by transferring to Pereyra a 25% ownership stake in KLIO Fitness, LLC. [Id. p. 2]. In addition, the APA recites that KLIO Fitness, LLC and Pereyra had executed an Employment Agreement [Id. at p. 7]. In the Employment Agreement,[6] the parties agreed that Pereyra would be employed by KLIO Fitness Clubs, LLC as an at-will employee, for an agreed-upon salary and with other terms and conditions. Pereyra was to provide managerial and other services for the Health Clubs. [ECF No. 1-4 ("Employment Agreement")]. In addition, the APA provides that Pereyra would not solicit customers of, or compete with, KLIO Fitness, LLC anywhere within the immediate geographical area of Interstate Route 495, for a period of 24 months from the later of the Closing Date, or the date upon which Pereyra's employment should terminate. [APA p. 9].

The APA further states that the agreement shall be governed by and construed in accordance with Massachusetts law. [Id. p. 14]. The APA also contains an integration clause, stating that the APA "shall constitute the entire agreement between the parties hereto with

---

[5] There does not appear to be any list of supplies or equipment attached to the APA.
[6] A copy of the Employment Agreement is attached to Plaintiffs' Complaint as Exhibit D. [ECF No. 1-4].

respect to the subject matter hereof and shall supersede all previous negotiations, commitments and writings, including but not limited to the NDA previously signed, with respect to such subject matter." [Id. p. 12].

**Pereyra's 2014 Termination and Lease Defaults**

On or about September 3, 2013, KLIO Fitness, LLC took possession of the Health Clubs, and City Fitness ceased its ownership and operation of the clubs. [Compl. ¶ 42]. On the same date, Pereyra began working under the terms of his Employment Agreement, serving as the general manager of all three Health Clubs, and as a consultant and advisor to Sedky, the majority owner of KLIO Fitness, LLC. [Id. ¶¶ 44-45].

Approximately one year later, on August 28, 2014, Pereyra's employment was terminated. [Id. ¶ 44]. Pereyra alleges that Defendants failed to pay him severance upon termination, in violation of the Employment Agreement, and that Defendants further failed to pay him for two weeks of wages and two weeks of accrued vacation time. [Id. ¶ 46]. Plaintiffs allege that as a result of Defendants' alleged actions with regard to his employment, Pereyra has suffered damages of $50,000. [Id. ¶ 70].

Plaintiffs also allege that although Defendants had initially made all payments on the equipment leases they had assumed under the APA, [id. ¶ 86], Defendants stopped making those monthly lease payments in or about June 2014. [Id. ¶¶ 47, 86]. Defendants also took steps to replace the leased equipment with new equipment, without Pereyra's knowledge or consent. [Id. ¶¶ 47, 86-87]. This caused the Plaintiffs to default on the existing leases, and the lessors subsequently initiated collection proceedings, threatened litigation, and compelled Pereyra to assume personal financial responsibility. [Id. ¶ 48].[7] Pereyra was forced to transfer, store,

---

[7] Plaintiffs allege that Sedky knew that Pereyra was personally liable on the leases, because Pereyra had informed him of this fact during their negotiations. [Compl. ¶ 34].

liquidate, and return certain equipment at his own expense, and to resume making monthly payments. [Id.]. Plaintiffs further allege that in the summer of 2014, Sedky consummated a "short sale" of certain equipment at the Boston Health Club. The equipment was subject to a lease for which Pereyra had given a personal guarantee. [Id. ¶ 49]. Plaintiffs allege that the short sale resulted in a deficiency, for which Pereyra was held personally responsible. [Id.]. Plaintiffs contend that as a result of the Defendants' alleged actions with regard to the equipment leases, Pereyra has suffered losses in excess of $152,000.00. [Id. ¶ 83].

**Alleged Service Mark Infringement**

Finally, Plaintiffs allege that Defendants are unlawfully using their "Leap Fitness" registered service marks for identification, marketing, and promotional purposes. The service marks and associated logo presently appear on several signs at the Health Club locations, on employee clothing and name tags, on letterhead, business cards, memoranda and member contracts, and throughout the website www.leapfitclubs.com, which is now operated by Defendants. [Id. ¶¶ 50-53]. Defendants also use the service marks on social media websites for marketing and promotional purposes. [Id.].

## III.    CLAIMS FOR RELIEF

Count I of the Complaint alleges that by using the Plaintiffs' Leap Fitness registered service marks, Defendants are willfully infringing on Plaintiffs' rights, and causing Plaintiffs damages, all in violation of the Lanham Act, 15 U.S.C. § 1114. In Count II, Plaintiffs allege that Defendants' unauthorized use of the Leap Fitness service marks is likely to cause confusion, mistake, and deception among consumers, and constitutes unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). Count III alleges that Defendants' use of the Leap Fitness service marks in connection with its websites, www.leapfitclubs.com, constitutes cyberpiracy in

violation of the Lanham Act, 15 U.S.C. § 1125(d). The claims in Counts II and III, however, are derivative of and dependent on the service mark infringement allegations set forth in Count I.

The remaining counts of the Complaint allege state-law claims for breach of Pereyra's Employment Agreement (Count IV); violation of the Massachusetts Wage and Hour Act, M.G.L. c. 149, § 148 (Count V); breach of fiduciary duty (Count VI); fraud and misrepresentation (Count VII); and violation of Massachusetts General Laws Chapter 93A (Count VIII).

## IV.   DISCUSSION

### A.  Legal Standard

"Under the Federal Rules of Civil Procedure, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Cardigan Mountain Sch., 787 F.3d at 84 (quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)) (further internal quotations and citation omitted). "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." Garcia-Catalan, 734 F.3d at 103 (internal quotations and citation omitted). In conducting this analysis, the Court must accept all well-pleaded facts as true and analyze those

facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

A "primary purpose" of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, the plaintiff could never win." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014). Accordingly, "[a] suit will be dismissed if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Hutcheson, 647 F.3d at 384 (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Dismissal is also appropriate when a document referenced in the complaint "reveals facts which foreclose recovery as a matter of law." Correa de Jesus v. United States, 923 F.2d 840 (1st Cir. 1990) (unpublished) (citing Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).

**B.  Federal Lanham Act Claims (Counts I, II, and III)**

The viability of the Lanham Act claims alleged in Counts I, II, and III depends on one threshold issue – whether Plaintiffs retained the rights to the "Leap Fitness" service marks after the asset purchase, such that Defendants' unauthorized use of those service marks gives rise to infringement, unfair competition, and cyberpiracy claims under the Lanham Act.

Plaintiffs argue that on a motion to dismiss, the Court must accept at face value the Complaint's allegation that the APA "contains no provision for the transfer, assignment, or sale of the Plaintiffs' registered service marks, and solely permits the Defendants to obtain rights to the name 'City Fitness.'" [ECF No. 28 p. 4 (citing Compl. ¶ 55)]. The Court disagrees. Plaintiffs have attached a copy of the APA to their Complaint, which makes it a part of their pleading for

all intents and purposes. <u>See</u> Fed. R. Civ. P. 10(c). Because the operative contract is properly before the Court, the Court is not bound by Plaintiffs' interpretation of the APA as set forth in their Complaint, and may itself consider whether, as a matter of law, the contract provides for the transfer of the service marks. <u>See</u> <u>Correa de Jesus</u>, 923 F.2d 840 ("Where an exhibit negates the allegations of the pleading to which it is attached, a court is not required to credit the unsupported allegations . . . .") (citing <u>Bell v. Lane</u>, 657 F. Supp. 815, 817 (N.D. Ill. 1987)); <u>see also</u> <u>Cardigan Mountain Sch.</u>, 787 F.3d at 84 (on a motion to dismiss, the Court need not credit conclusory legal allegations).

After reviewing the APA in its entirety [ECF No. 24-1], together with the facts alleged in Plaintiffs' Complaint, the Court concludes that the APA unambiguously transferred <u>all</u> of the Seller's assets to KLIO Fitness, LLC, including all of the Seller's goodwill, and any associated trademarks or service marks. Thus, because City Fitness, LLC is no longer the lawful owner of the Leap Fitness service marks, Plaintiffs' Lanham Act claims fail as a matter of law.

### 1. Trademarks are presumptively included in the sale of a business.

A service mark is defined as "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. "The definition of 'service mark' is virtually identical to the definition of 'trademark.' But while service marks apply to intangible services, trademarks are used to distinguish tangible goods." <u>Aycock Eng'g, Inc. v. Airflite, Inc.</u>, 560 F.3d 1350, 1356 (Fed. Cir. 2009). The Lanham Act, however, "generally applies the same principles concerning registration and protection to both trade and service marks." <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U.S. 189, 191 n.1 (1985) (citing 15 U.S.C. § 1053).

A trade or service mark serves several purposes. "It allows buyers to identify the goods to which it is affixed as from a particular source and distinguishes those goods from similar merchandise of others. Also, the mark often signifies that all goods bearing that mark are of like quality. Finally, the mark is valuable in the advertising and sale of the trademarked goods." Premier Dental Prods. Co. v. Darby Dental Supply Co., 794 F.2d 850, 853 (3d Cir. 1986) (citing 1 J. McCarthy, Trademarks and Unfair Competition § 3.1 (2d ed. 1984)).

Courts have noted that a trade or service mark "is merely a symbol of goodwill and has no independent significance apart from the goodwill that it symbolizes." Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999); see also Premier Dental Prods. Co., 794 F.2d at 853. Consequently, the purported sale or assignment of a mark without the goodwill that the mark represents is an invalid assignment-in-gross. Boathouse Grp., Inc. v. TigerLogic Corp., 777 F. Supp. 2d 243, 250 (D. Mass. 2011) ("To be valid, an assignment of a trademark must include an assignment of the goodwill associated with the mark and an assignment in gross is invalid."). "The purpose for requiring transfer of goodwill along with the transfer of the trade or service mark is to ensure that consumers receive accurate information about the product or service associated with the mark." Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc., 278 F.3d 1076, 1083 (10th Cir. 2001).

Because assignments-in-gross are invalid, it is an "old and clear" corollary rule that "[w]hen a business is sold as a going concern, trademarks and the good will of the business that they symbolize are presumed to pass with the sale of the business." 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 18:37 (4th ed.); see also Canadian Club Beverage Co. v. Canadian Club Corp., 268 Mass. 561, 568 (1929) ("Even where the sale agreement omits to mention good will in the transfer of a business, it is presumed that the good will passes with the

other assets."). "Thus, even if the word 'trademark' or similar terms are not mentioned in the contract of sale of the business, the trademarks of the business are presumed to pass to the buyer as an important part of the business and its good will." McCarthy, supra, at § 18:37; see also 3 L. Altman & M. Pollack, Callmann on Unfair Competition, Trademarks, and Monopolies § 20:39 (4th ed. 2012) ("[I]f all of a business' goodwill is transferred, the sale implicitly includes the relevant marks even if the marks are not mentioned in the paperwork.").

### 2. All rights to the Leap Fitness service marks were transferred to KLIO, LLC under the parties' Asset Purchase Agreement.

Defendants argue that in this case, consistent with the presumption that the sale of a business includes all applicable trademarks, the APA clearly contemplates wholesale acquisition of all assets owned by City Fitness, including any and all goodwill and any associated trademarks or service marks. The Court agrees. The APA's "Preliminary Statement" expressly provides that the "Purchaser desires to acquire from the Seller, and the Seller desires to transfer to the Purchaser, all of the Seller's assets properties and business (the 'Assets'), and the three [Health Clubs] ('Facilities'), as set forth in Schedule 1.1 attached hereto, upon the terms and conditions set forth in this Agreement." [APA p. 1] (emphasis and alteration added).

In turn, Schedule 1.1 to the APA defines the "Assets" purchased as

> [a]ll of City Fitness' right, title, interest in, to and of the business Facilities, including but not limited to, all of the assets, any and all customer lists, goodwill, name, equipment, leasehold improvements, security deposits, Accounts Receivables, computers, software, furniture and equipment, and any and all assets used in the business. All assets shall be sold free and clear of any liens or encumbrances.

[Id. p. 16]. Although the parties did not specifically enumerate service marks or trademarks amongst the assets to be transferred, they did express a clear intent to transfer all assets used in the business, and all of the Seller's goodwill. Thus, it is presumed that the Leap Fitness service

marks passed to the Purchaser "as an important part of the business and its good will."

McCarthy, supra, at § 18:37; see also President Suspender Co. v. Macwilliam, 238 F. 159, 162

(2d Cir. 1916) ("A sale of a business and of its good will carries with it the sale of the trade-mark

used in connection with the business, although not expressly mentioned in the instrument of

sale."); Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Prods., 75 F.2d 13, 15 (5th Cir.

1935) (because trademarks "attach to and pass with the good will of a business . . . [n]o

particular form of words is necessary to transfer them; they inhere in and pass with good will");

Am. Dirigold Corp. v. Dirigold Metals Corp., 125 F.2d 446, 453 (6th Cir. 1942) ("The rule of

law is well recognized that in a voluntary sale of a business as an entirety, trademarks and trade

names, which have been lawfully established and identified with such business, will pass to one

who purchases as a whole the physical assets or elements of the business, even though not

specifically mentioned in the conveyance.").

     In response, Plaintiffs argue that the Leap Fitness service marks are not specifically

enumerated in Schedule 1.1 to the APA, whereas Schedule 1.1 does specifically list "City

Fitness" as a "Name" included in the asset purchase. Plaintiffs claim that this demonstrates the

parties' intent to exclude the Leap Service marks from the asset purchase. The Court does not

find this argument persuasive. The language of the first paragraph of Schedule 1.1 provides that

the "Assets" transferred include "any and all assets used in the business." [APA p. 16]. The fact

that the the parties went on to enumerate some of those assets in express terms does not narrow

the scope of the transaction.

     The Court further notes that not all of the assets listed in the first paragraph of Schedule

1.1 are repeated in the subsequent list. For example, although the first paragraph defines

"Assets" to include the Seller's "customer lists," customer lists are not expressly included in the

list below. Similarly, there are no line items for "goodwill," "security deposits," "software," or "furniture," all of which are expressly mentioned in the first paragraph of Schedule 1.1. [Id.]. Conversely, some of the items enumerated in the list on Schedule 1.1 are not expressly included in the first paragraph (e.g., "supplies," and "customer contracts"). Therefore, the fact that the Leap Fitness service marks are not expressly referenced in Schedule 1.1 does not evidence an intent to exclude those service marks from the asset purchase transaction, particularly where the text of the APA so clearly states that all the Seller's assets were to be transferred. See Gen. Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) ("When the words of a contract are clear, they must be construed in their usual and ordinary sense . . . and we do not admit parol evidence to create an ambiguity when the plain language is unambiguous.") (citations omitted).

Additionally, the APA contains no suggestion that Plaintiffs intended to retain any portion of their former business' goodwill, or to continue doing business as "Leap Fitness" after the asset purchase. See Berni v. Int'l Gourmet Restaurants of Am., Inc., 838 F.2d 642, 647 (2d Cir. 1988) ("[I]n order for the owner of a mark to retain, upon sale of the business associated with the mark, the right to resume using the mark in a new enterprise, the owner's intent to resume producing substantially the same product or service must be manifest, some portion of the goodwill of the previous business must remain with the owner, and resumption of operations must occur within a reasonable time.") In fact, the APA expressly contemplated that after the asset purchase, Pereyra would be employed as a full-time manager of the Health Clubs, and a stakeholder in KLIO, LLC. Moreover, the APA contains a covenant by which Pereyra and City Fitness agree not to compete with KLIO LLC's health clubs, in the event that Pereyra's employment was terminated. These contractual provisions further confirm that Pereyra and City

Fitness did not intend to retain any goodwill or continue to operate some segment of their business after the asset purchase. See Moloney v. Centner, 727 F. Supp. 1232, 1240 (N.D. Ill. 1989) (noting that five year noncompetition provision in parties' agreement evidenced plaintiffs' lack of intent to resume operations).

In sum, because the language of the parties' APA is clear and unambiguous with respect to the parties' intent to transfer all assets, because those assets include the Seller's goodwill and therefore any associated trade or service marks, and because there is no language in the APA that compels a contrary conclusion, the Court holds that the "Leap Fitness" service marks were transferred to KLIO, LLC upon execution of the APA. Accordingly, Plaintiffs' Lanham Act claims for service mark infringement, unfair competition, and cyberpiracy fail as a matter of law. Defendants' Motion to Dismiss is, therefore, ALLOWED as to Counts I, II, and II of Plaintiffs' Complaint. [8]

---

[8] In the alternative, Plaintiffs argue that the service marks were not validly assigned to Defendants because the APA was entered into by "City Fitness, Inc.," and not "City Fitness Group, LLC." [ECF No. 28, pp. 6-7]. Plaintiffs posit that where the service marks were registered to "City Fitness Group, LLC," City Fitness, Inc. had no power to transfer the marks to KLIO, LLC under the APA. This argument is without merit. The first paragraph of the APA states that the agreement is entered into by "City Fitness," a "Massachusetts corporation organized and existing under the laws of the Commonwealth of Massachusetts (the 'Seller')." [APA p. 1]. But Paragraph 3.1 of the APA, titled "Organization of the Seller," states that the Seller "is a limited liability company duly organized, validly existing and in good standing under the laws of the Commonwealth of Massachusetts . . . ." [Id. p. 3]. Although the Court acknowledges that these two clauses raise some question about which entity's assets were purchased, any ambiguity has been put to rest by the facts alleged in Plaintiffs' Complaint. Notably, Pereyra is both the sole shareholder of City Fitness, Inc. [id. p. 15], and the sole member of City Fitness Group, LLC [Compl. ¶ 14]. Plaintiffs' Complaint also admits that City Fitness Group, LLC "operated under the trade name 'Leap Fitness' and is the former owner and operator of three (3) health and fitness clubs" acquired under the APA. [Id. ¶ 15]. Finally, Plaintiffs' Complaint expressly concedes that City Fitness Group, LLC was a party to the APA. [Id. ¶¶ 12, 35 ("On or about August 16, 2013, KLIO Fitness, LLC and City Fitness [Group LLC] entered into an Asset Purchase Agreement . . . ."); ¶ 36 (stating that the APA "defines . . . City Fitness Group, LLC as the Seller")]. "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992) (internal

**V.      CONCLUSION**

For the foregoing reasons, the Defendants' Partial Motion to Dismiss [ECF No. 21] is hereby <u>ALLOWED</u> as to Counts I, II, and III of Plaintiffs' Complaint, and the claims in those counts are <u>DISMISSED</u>. The Court, consistent with discussions with counsel at the November 18, 2015 hearing, declines to exercise supplemental jurisdiction over the remaining state-law claims alleged in Counts IV - VIII, <u>see</u> 28 U.S.C. § 1367(c), but notes that the Plaintiffs may elect to pursue these claims in state court.

**SO ORDERED.**

Dated: December 3, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE

---

quotations and citation omitted). Because Plaintiffs have acknowledged that City Fitness Group, LLC was a party to the APA, they cannot now evade dismissal by arguing the contrary.